THIGPEN, Judge.
In July 1993, the Madison County Department of Human Resources (DHR) filed a dependency petition in juvenile court, alleging that C.J. was a dependent child and seeking temporary legal custody of the child. DHR alleged that the child was in the physical custody of L.J., who is not his biological mother, and that L.J. was not an appropriate person to exercise care, custody, and control over the child. DHR was also attempting to have another child in L.J.’s custody declared a dependent child.
After ore tenus proceedings, the juvenile court entered an order finding that the child was dependent and that it was in the child’s best interests for him to be removed from L.J.’s custody and to be placed in the temporary custody of DHR. L.J. appeals, contending that the trial court erred in awarding temporary custody to DHR.
The record reveals that L.J. has had physical custody of C.J. since he was an infant, and that C.J. was four years old at the time of trial. L.J. also had legal custody of an unrelated teenage child. C.J.’s biological father testified that he and the biological mother were having financial difficulties and that they decided to give L.J. one of their children. At that time, the biological parents consented to L.J. and her husband adopting C.J. An adoption petition was filed, but the adoption was never finalized. L.J. has since separated from her husband, and, at the time of trial, she was living with a boyfriend. The biological father testified that he no longer consented to the adoption of C.J. by L.J. He further testified that he and the biological mother were unable to accept custody of C.J. at this time.
A DHR social worker testified that she first became involved in an investigation of this case in June 1993, when the teenage child came to her office to report that L.J. was leaving him alone to care for C.J. and an Alzheimer’s patient that lived in L.J.’s home. The social worker testified that shortly after this report was made, L.J. ordered the teenager out of her home, and the teenager was placed in shelter care. The social worker testified that during her investigation, she learned of a previous incident, which was investigated by DHR, in which C.J. had red marks on his back and stomach. There was disputed testimony as to whether L.J., her *469 husband, or the teenage child in her custody caused these marks on C.J.’s back. The social worker also learned of an incident in which C.J.’s arm was broken when he was approximately 6 months old. She testified that there was some indication that L.J. had broken the child’s arm by jerking him up when she was angry. L.J. testified that the child broke his arm when he fell off a sofa.
Another social worker testified regarding an incident in July 1993, in which someone allegedly gave a child an incorrect medication. She testified that she was called to the emergency room regarding the child, and that a police officer at the hospital reported to her that he thought that L.J., whom he believed to be the child’s mother, had been drinking. After his stomach was pumped, C.J. was released to this social worker and has since remained in DHR custody. L.J. testified that she was not drinking alcohol on this occasion; however, hospital records reflect that L.J. admitted to having had a drink. L.J. testified that she later discovered that her boyfriend had given C.J. a Tylenol, and that because her boyfriend was mad at her, he said he had given C.J. a pill from L.J.’s prescription. The boyfriend testified that he gave C.J. a Tylenol because the child had a cold.
Although other testimony indicated that L.J. drank alcohol daily or that she had a drinking problem, L.J. testified that she drank only occasionally. L.J. testified that she had been married several times, that she was living with her current boyfriend at the time of trial, and that she had lived in numerous residences since she has had physical custody of C.J. L.J. testified that she loves C.J. and that she wants to adopt him. She further testified that she has visited C.J. “every chance they would let me” since he has been in DHR’s custody.
Following ore tenus proceedings in a child custody case, the trial court’s findings are presumed correct and will not be disturbed on appeal unless the decision is unsupported by the evidence, and is, therefore, palpably wrong. Lee v. Jackson County Dep’t of Pensions & Security, 470 So.2d 1294 (Ala.Civ.App.1985). If there is clear and convincing evidence that C.J. was a dependent child and that DHR should be awarded custody, absent palpable error, we must affirm the trial court’s judgment. Ala.Code 1975, § 12 — 15—65(f); Lee, supra. Furthermore, where the evidence is conflicting, matters of dependency and custody rest within the discretion of the trial court. Lee, supra. The controlling consideration in custody cases is always the best interests of the child. Brazier v. State Dep’t of Human Resources, 554 So.2d 1049 (Ala.Civ.App.1989); see also Lee, supra.
At trial, the parties stipulated that the child was dependent. The parents declined custody of their child and indicated that L.J. was not the proper custodian for the child; however, they indicated that they were not opposed to DHR’s having legal custody. Nothing in the record indicates that L.J. has any legal relationship to the child, and her reliance on cases involving custody disputes between parents, or disputes involving parents and nonparents, is misplaced. Furthermore, the trial court’s order indicates that it gave great consideration to L.J.’s relationship with the child while he was in her physical custody. The trial court had several options for disposition of the case to protect the welfare of the dependent child, including ordering legal custody to DHR. Ala.Code 1975, § 12-15-71(a). Our review of the record reveals clear and convincing evidence to support the finding that C.J. was a dependent child, and that placing temporary legal custody of C.J. with DHR was in the child’s best interests. We find no error.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.